**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| In re:<br><br>Kyle Parker,<br><br>Debtor.<br><br>Kyle Parker,<br><br>Appellant,<br><br>v.<br><br>CSFB 2005-C3 Payson Homes, LLC; Jean Glover,<br><br>Appellees. | No. CV-15-02106-PHX-NVW<br>(Consolidated with<br>No. CV-15-02108-PHX-NVW)<br><br>Bk. No. 14-BK-01941-GBN<br><br>**ORDER** |
|---|---|

Kyle Parker appeals from two bankruptcy court orders in a Chapter 11 case. The first determined the value of real property pursuant to 11 U.S.C. § 506(a). The second granted relief from automatic stay pursuant to 11 U.S.C. § 362(d). For the reasons that follow, the first order will be affirmed, and the appeal from the second order will be dismissed for lack of jurisdiction.

I. **BACKGROUND**

Parker owns several neighboring parcels of land, on which he operates a profitable mobile home park. (ER 128-29.)[1] One parcel contains mobile home spaces that are rented to park residents ("the renters parcel"). (ER 129.) Other parcels provide amenities to park residents such as water, sewage treatment, storage, and postal facilities. (*Id.*) Each parcel plays a part in the larger going concern.

In 2014, Parker filed a Chapter 11 bankruptcy petition and reorganization plan. (ER 128, 187.) Under the reorganization plan, Parker would continue to operate the park as a going concern, to generate income to pay creditors' claims. (ER 187.) As before, the income would be generated by renting units on the renters parcel.

One of the creditors was Payson Homes, LLC ("Payson Homes"). (ER 189.) Payson Homes' claim was secured by a lien on the renters parcel. (ER 129, 189.) Parker's reorganization plan would have him making monthly payments to Payson Homes based on the value of the renters parcel. (ER 193.)

In April 2015, the bankruptcy court held an evidentiary hearing to determine the value of the renters parcel. (ER 204.) At the hearing, Payson Homes and Parker offered competing expert appraisals.

Payson Homes' expert testified that the renters parcel had a "standalone fair market value" of $2,660,000. (ER 219.) His methodology assumed a buyer would use the parcel as a standalone mobile home park, not as part of the larger going concern. (ER 219, 238-42.) He reached the $2,660,000 figure by estimating the income likely to be produced by the parcel as a standalone park and then subtracting the costs of improving and maintaining it. (ER 242-44.) He also noted comparable properties were selling for similar prices. (ER 249-56.)

In contrast, Parker's expert testified that the renters parcel had an "as-is market value" of $255,000. (ER 400-01.) His methodology assumed a buyer would hold the

---

[1] "ER" numbers refer to pages in Appellant's Excerpts of Record. (Docs. 16-21.) "SER" numbers refer to pages in Appellee's Supplemental Excerpts of Record. (Doc. 27.)

1  parcel as vacant land, for possible future residential development or mobile home park
2  development. (ER 405-07.) He reached the $255,000 figure by estimating the value of
3  the land as if it had no mobile home park improvements and then subtracting the costs of
4  demolishing the already-existing improvements. (ER 405.)

5  In June 2015, Payson Homes moved to lift the automatic stay triggered by
6  Parker's bankruptcy petition. (SER 1-2.) In July 2015, the bankruptcy court held another
7  evidentiary hearing on the value of the renters parcel. (ER 452-53.) No further expert
8  appraisals were offered at that hearing.

9  In August 2015, the bankruptcy court heard argument on the value of the renters
10 parcel and on Payson Homes' motion to lift the automatic stay. (ER 746-47.) As to the
11 renters parcel, the court rejected Parker's expert's methodology and deemed the $255,000
12 figure irrelevant. (ER 751.) The court accepted Payson Homes' expert's methodology
13 but determined that he underestimated how much it would cost to make a standalone
14 mobile home park. (ER 754-55.) The court estimated it would cost another $1 million,
15 making the correct valuation $1,660,000, not $2,660,000. (*Id.*) Accordingly, the court
16 decided Parker's reorganization plan could not be confirmed as written. (ER 800.)

17 As to the automatic stay, the court noted that this "2014 case" was aging and
18 doubted whether Parker could "realistically" work with the court's $1,660,000 valuation.
19 (*Id.*) The court decided the stay would be lifted unless Parker could confirm a new,
20 binding reorganization plan. (ER 800-01.)

21 The court published these decisions in two short written orders on September 15
22 and 25, 2015. In the first (the "Valuation Order"), the court valued the renters parcel at
23 $1,660,000, denied confirmation of Parker's plan, and ordered Parker to use the
24 $1,660,000 value in any amended plan. (SER 278-79.) In the second (the "Stay-Relief
25 Order"), the court granted Payson Homes' motion to lift the automatic stay and ordered
26 "the automatic stay is lifted as of 5:00 p.m. on Friday, November 27, 2015, unless
27 [Parker] confirms a plan that binds [Payson Homes] or the parties reach a settlement prior
28

to that time and date." (SER 285-86.) Parker appeals from these orders under 28 U.S.C. § 158(a). (SER 274-77, 281-84.)

## II. STANDARD OF REVIEW

The bankruptcy court's findings of fact are reviewed for clear error, while its conclusions of law are reviewed de novo. *In re JTS Corp.*, 617 F.3d 1102, 1109 (9th Cir. 2010). The Court must accept the bankruptcy court's findings of fact, unless the Court is left with the definite and firm conviction that a mistake has been committed. *Id.* Mixed questions of law and fact are reviewed de novo. *Id.*

## III. ANALYSIS

Parker claims the bankruptcy court erred in valuing the renters parcel at $1,660,000 and in granting Payson Homes' motion for relief from the automatic stay.

### A. Valuation of the Renters Parcel

Federal district courts have jurisdiction to hear appeals from "final" bankruptcy court orders. 28 U.S.C. § 158(a)(1). An order determining the value of property pursuant to 11 U.S.C. § 506(a) is a final order if the valuation was made for purposes of plan confirmation. *In re Creekside Sr. Apartments, LP*, 477 B.R. 40, 45 (B.A.P. 6th Cir. 2012). Here, the bankruptcy court made its valuation for use in connection with Parker's plan and the confirmation process. (SER 278-79.) Thus the Valuation Order is a final order. *In re Creekside*, 477 B.R. at 45.

Valuation is a mixed question of law and fact. *In re Stembridge*, 394 F.3d 383, 385 (5th Cir. 2004). Parker argues the bankruptcy court incorrectly adopted Payson Homes' valuation methodology, which assumed the parcel would be used as an income-producing mobile home park, instead of Parker's valuation methodology, which assumed the parcel would be used as vacant land.

Parker's argument runs afoul of the governing statute. Valuation of a claim secured by a property lien is governed by 11 U.S.C. § 506(a)(1), which requires that value be determined in light of "the proposed disposition or use of such property":

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. Such value *shall be determined in light of the purpose of the valuation and of the proposed disposition or use of the property*, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a)(1) (emphasis added). Parker's reorganization plan proposed that the renters parcel would remain part of his mobile home park. In light of this "proposed disposition or use of the property," the bankruptcy court did not err in valuing the parcel as if it would be used as a mobile home park.

Case law further undermines Parker's position. Parker relies on *Associates Commercial Corp. v. Rash*, a case interpreting § 506(a) in the context of a Chapter 13 "cram down" plan.[2] 520 U.S. 953, 955 (1997). But *Rash* held that under § 506(a), property securing a creditor's claim should be valued according to its "replacement value," i.e., "the price a willing buyer in the debtor's trade, business, or situation would pay to obtain like property from a willing seller." *Id.* at 955-56, 960. Parker's "trade, business, or situation" is operating a mobile home park. He uses the renters parcel as part of his park, and he hopes to continue doing so. It was therefore reasonable for the bankruptcy court to value the parcel from the perspective of a buyer who would use it as a mobile home park.

Parker's valuation methodology, in contrast, leads to absurdity. Parker would value the renters parcel as if it were vacant land, *minus* demolition costs, even though he and any reasonable buyer would put the land to productive use. That is like valuing a car

---

[2] Both parties assume *Rash* applies even though this is a Chapter 11 case. *See In re Mulvania*, 214 B.R. 1, 9-10 (B.A.P. 9th Cir. 1997) (applying *Rash* to Chapter 11 case).

- 5 -

with a bad clutch as if it were scrap metal, *minus* scrapping costs, even though the owner would continue to drive the car.  The better valuation would take into account the commodity's more profitable purpose—and the owner's actual plan to pursue that purpose.

Parker alternatively argues that, even if Payson Homes' methodology was correct, the bankruptcy court lacked evidence that the renters parcel could operate as a standalone park and had no basis for the $1,660,000 figure.  This argument fails.  First, as discussed at oral argument, the renters parcel originally was a standalone park.  The bankruptcy court could infer from this history alone that the parcel could be a standalone park in the future.  Second, *Rash* specifically noted that the "replacement-value" methodology "leaves to bankruptcy courts, as triers of fact, identification of the best way of ascertaining replacement value on the basis of the evidence presented."  520 U.S. at 965 n.6.  Here, the "evidence presented" did not prove either party's appraisal.  As the bankruptcy court noted, Parker's appraisal was fundamentally misguided, and Payson Homes' appraisal, though methodologically superior, failed to consider important costs.  Perhaps a more sensible and reliable appraisal could have been conducted.  But the point is that neither party—and especially not Parker—presented such an appraisal to the court.  Faced with no completely satisfactory appraisal, the court made do by subtracting from Payson Homes' appraisal $1 million in additional costs.  This decision made sense, especially since the court had already conducted multiple evidentiary hearings.  The court was well within its fact-finding authority in arriving at the valuation it did.

### B. Relief from Automatic Stay

Ordinarily, orders lifting the automatic stay are final for purposes of appeal.  *See In re Nat'l Envtl. Waste Corp.*, 129 F.3d 1052, 1054 (9th Cir. 1997).  This is because lifting the stay exposes debtor assets to foreclosure proceedings and litigation harassment, the adverse effects of which cannot be remedied by an appeal at the conclusion of the bankruptcy proceeding because by then the injury will have already been inflicted.  *See United States v. Nicolet, Inc.*, 857 F.2d 202, 206 (3d Cir. 1988).

Here, however, the Stay-Relief Order did not expose Parker's assets to foreclosure proceedings or litigation harassment. In fact, it did not lift the automatic stay at all. Its only effect was to set a deadline—November 27, 2015—by which the stay would be lifted if Parker could not confirm an amended reorganization plan in light of the court's recent Valuation Order. (*See* SER 285-86.)

That deadline has turned out to be extremely flexible, since the automatic stay remains in place even now, several months later. The bankruptcy court has postponed the deadline on several occasions, and the automatic stay will remain in place pending further order. (Doc. 35 at 1-2; *accord* Doc. 33 at 2.) In the meantime, Parker has proposed an amended plan valuing the renters parcel in accordance with the Valuation Order. (Doc. 35 at 2; Doc. 33 at 2.) An initial confirmation hearing for that amended plan is set for April 27, 2016, and a final confirmation hearing is scheduled for August 9 and 10, 2016. (Doc. 35 at 2-3; *accord* Doc. 33 at 2-3.) This generous confirmation schedule demonstrates the bankruptcy court did not intend the Stay-Relief Order to take immediate effect or to resolve the parties' dispute. At most, the court intended to inform Parker he would have only one more chance to propose a confirmable plan. This did not end the show; it set the stage for the final act.

A recent Supreme Court opinion supports this conclusion. In *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686 (2015), the Court held that an order denying confirmation of a Chapter 13 repayment plan and giving leave to propose an amended plan was not "final" for appealability purposes. *Id.* at 1692-93. The Court reasoned that denying confirmation with leave to amend "changes little," since the "automatic stay persists," the "parties' rights and obligations remain unsettled," there is "anticipation of a different plan's eventual confirmation," and the "possibility of discharge lives on." *Id.* at 1693. The same is true of the Stay-Relief Order. The Court's observation in *Bullard* is apt: "'Final' does not describe this state of affairs." *Id.*

The Stay-Relief Order is better characterized as an interlocutory order, not appealable as of right. Indeed, at oral argument both parties appeared to concede this

point. Federal district courts may grant leave to appeal from such orders. 28 U.S.C. § 158(a)(3). But Parker provides no persuasive reason to do so. He admits the "main issue" in his appeal is the bankruptcy court's valuation. (Doc. 35 at 7.) That has already been reviewed. Thus, the Court declines to hear Parker's appeal from the Stay-Relief Order.

IT IS THEREFORE ORDERED affirming the bankruptcy court's valuation in its September 15, 2015 Valuation Order.

IT IS FURTHER ORDERED dismissing Parker's appeal from the bankruptcy court's September 25, 2015 Stay-Relief Order for lack of jurisdiction.

Dated this 15th day of April, 2016.

Neil V. Wake
United States District Judge